UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 14-323 DSD/LIB

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM IN SUPPORT OF |
| v. | ) | MOTION TO SUPPRESS EVIDENCE |
| | ) | OBTAINED AS A RESULT OF |
| REX LEE FURMAN, | ) | SEARCH AND |
| | ) | SEIZURE & STATEMENTS |
| | ) | |
| Defendant. | ) | |

The defendant, Rex Lee Furman, by and through his attorney, Manny K. Atwal, hereby submits this memorandum in support of his motion to suppress evidence and a statement.  Mr. Furman is charged with the following:

Count 1-8:    Production of Child Pornography from September 3, 2012
Count 2-9:    Production of Child Pornography from August 26, 2012
Count 14:    Distribution of Child Pornography from October 15, 2013
Count 15:    Distribution of Child Pornography from August 23, 2013
Count 16:    Receipt of Child Pornography from March 15, 2013
Count 17:    Possession of Child Pornography from February 13, 2014
Count 18:    Commission of a Felony Offense Involving a Minor

Law enforcement began investigating Mr. Furman after they received information that someone was downloading suspected child pornography.  Based on that information, a search warrant was applied for and executed.  While executing the search warrant, officers interrogated Furman at his home.

A motion to suppress statements, along with other motions were the subject of a

motion hearing on February 2, 2015.  During the hearing, the government introduced the

following exhibits:

> Exhibit 1:    CD Recording of the statement
> Exhibit 2:    Search Warrant

S/A David Giguere testified at the motion hearing.  A transcript of the motion hearing

has not yet been prepared.

## FACTS FROM MOTION HEARING

S/A Giguere from the BCA testified at the motion hearing.  He received

information that suspected child pornography was being downloaded from an IP address.

It was determined that the subscriber of the IP address lived in Federal Dam.  Law

enforcement obtained a search warrant. (Exhibit 2).

Giguere learned that Rex Furman resided on the property that was to be searched.

He learned that Furman was a registered sex offender.  He knew that Furman had prior

sex offenses on his record.  He knew that there was a prior allegation by Furman's

grandchildren that they were abused by Furman.  Giguere did not know Furman's

educational level or this medical needs.

The search warrant was executed on February 13,  2014.  There are two homes on

the property.  Furman's brother lives in one home and Furman lives in the other home.

Aside from the Agent, there were six other law enforcement officers inside the home.  At

least one officer was in uniform. The uniformed officer stood by the front door, while

others searched the home.  Giguere pulled up a chair and sat across from Furman.

Furman was read his Miranda rights. Giguere began asking questions and Furman responded. The 20-30 minute interrogation was recorded (Exhibit 1).

## LEGAL ANALYSIS

### I.    STATEMENT

A *Miranda* warning must precede any custodial interrogation.  A custodial interrogation involves "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."  *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Furman was advised of his *Miranda* rights.

An "interrogation" subject to *Miranda* requirements occurs whenever there are words or actions on the part of the police that the police should know are reasonably likely to elicit an "incriminating response."  *Rhode Island v. Innis*, 446 U.S. 291, 302, 100 S.Ct. 1683, 1690, 64 L.Ed.2d 297 (1980). In this case, as is clear from the interrogation, the detective asked questions and Furman responded. Clearly, he was interrogated.

In deciding whether a person is "in custody", the court will examine both the presence and extent of physical and psychological restraints placed upon the person's liberty during the interrogation "in light of whether a 'reasonable person in the suspect's position would have understood his situation' to be one of custody."  *United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)).  Although it does not weigh heavily in the

analysis, "the fact that an individual has become the focus of an investigation is relevant 'to the extent that the suspect is aware of the evidence against him' and this awareness contributes to the suspect's sense of custody." *United States v. Griffin*, 922 F.2d 1343, 1348 (8th Cir. 1990).

In evaluating the totality of the circumstances, the Eighth Circuit has applied six factors for determining whether a person is in custody; a) whether the suspect voluntarily acquiesced to official questioning or initiated contact with authorities; b) whether the suspect was informed during the interview that the questioning was voluntary, that he could ask officers to leave, or that he was not considered under arrest; c) whether the suspect possessed unrestrained freedom of movement during questioning; d) whether strong arm tactics or deceptive stratagems were employed during questioning; e) whether there was a police-dominated atmosphere; and f) whether the suspect was placed under arrest at the termination of the questioning. *United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990). All six of these factors need not be present for a finding of custody requiring a *Miranda* warning, nor is this list exhaustive. A particularly strong showing with respect to one factor may compensate for a deficiency with respect to other factors. *South Dakota v. Long*, 465 F.2d 65, 70 (8th Cir. 1972). Also, when the confrontation between the suspect and the criminal justice system is instigated at the direction of law enforcement authorities, rather than the suspect, custody is more likely to exist. *United States v. Longbehn*, 850 F.2d 460, 451 (8th Cir. 1988).

4

Giguere testified that while officers searched Mr. Dorweiler's home, Furman was seated in the living room with him. A uniformed officer stood close by at the front door, Furman could not simply leave. Other officers were in and around the area searching the area and at one point two agents stood behind Giguere. The interrogation scene was police dominated. There were cars parked in the driveway and at least three law enforcement vehicles. After the 20-30 minute interrogation, Furman was not arrested, but was arrested months later. These facts show that Mr. Furman was in custody at the time he was interrogated and further plays into the voluntariness of his answers.

The Supreme Court held that a waiver of the Fifth Amendment privilege against self-incrimination is valid if made voluntarily, knowingly and intelligently. *Miranda v. Arizona*, 384 U.S. 436, 444 (1996). "[A] waiver is voluntary if it was the product of a free and deliberate choice rather than intimidation, coercion or deception." *United States v. Harper*, 466 F.3d 634, 643 (8th Cir. 2006)). In order to determine whether a confession was voluntary, we look to the "totality of the circumstances and must determine whether the individual's will was overborne." *United States v. Gaddy*, 532 F.3d 783, 788 (8th Cir. 2008) (quoting *United States v. Castro-Higuero*, 473 F.3d 880, 886 (8th Cir. 2007)). Whether a confession is voluntary under the totality of the circumstances, a Court should examine both the conduct of the officers and the characteristics of the accused. The Court should look at the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, mental

5

condition.  *United States v. Boslau*, 632 F.3d 422, 428-29 (9th Cir. 2011); see also *United States v. LeBrun*, 363 F.3d 715, 724 (8th Cir. 2004); *Sheets v. Butera*, 389 F.3d 772, 779 (8th Cir. 2004).

In this case, the interrogation lasted 20-30 minutes.  It occurred in Furman's home. His niece was inside the home and his brother was in on the same property right next door.  Furman was seated across from the Agent in his living room, with an uniform officer stationed at the front door.  Although Furman was read his Miranda rights, he did not waive his rights voluntarily.  As such, his statements should be suppressed.

## II.   SEARCH WARRANT

Furman requests the Court review the search warrant, Exhibit 2, for probable cause.

## CONCLUSION

Respectfully, Furman requests that the Court grant his motion to suppress evidence and his statements.

Dated:  February 6, 2015

Respectfully submitted,


*s/Manny K. Atwal*
_____
MANNY K. ATWAL
Attorney ID No. 282029
Attorney for Defendant
107 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415