UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,                    Court File No. 14-cr-323 (DSD/LIB) (1)

              Plaintiff,

v.                                           **REPORT AND RECOMMENDATION**

Rex Lee Furman,

              Defendant.

This matter comes before the undersigned United States Magistrate Judge upon Defendant Rex Lee Furman's ("Defendant") Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 21], and Motion to Suppress Statements, Admissions, and Answers, [Docket No. 22]. This case has been referred to the undersigned Magistrate Judge for a report and recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Local Rule 72.1. The Court held a motions hearing on February 2, 2015, regarding the parties' pretrial motions.[1]

For reasons discussed herein, the Court recommends that Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 21], and Motion to Suppress Statements, Admissions, and Answers, [Docket No. 22], be **DENIED**.

## I.   BACKGROUND AND STATEMENT OF FACTS

### A. Background

Defendant is charged with thirteen counts of production of child pornography, in violation of 18 U.S.C. §§ 2251(a), 2251(e), and 3559(e); two counts of distribution of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1); one count of receipt of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1); one count of

---

[1]The Court addressed the parties' pretrial discovery motions by separate order, [Docket No. 27].

possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2); and one count of commission of a felony offense involving a minor when required to register as a sex offender, in violation of 18 U.S.C. 2260A. (Indictment [Docket No. 1]).

**B. Facts[2]**

The record presently before the Court indicates that Defendant resides in Gould Township, Minnesota, in a house located at 10578 Sugar Point Drive Northwest. (Government's Ex. 2 at 8). Defendant's brother resides in a second house located on the same property, which has the street address 10580 Sugar Point Drive Northwest. (Id.). Defendant's brother pays for an internet account for the two residences that Defendant uses to wirelessly access the internet. (Government's Ex. 1 at 3:00-3:15). As a result, Defendant and his brother access the internet through a single account with one IP address. (See, Government's Ex. 2 at 8; Government's Ex. 1 at 3:00-3:15).

In August 2013, Special Agent David Giguere ("SA Giguere") of the Minnesota Bureau of Criminal Apprehension discovered that someone using a computer associated with IP address 198.37.138.16 was sharing digital images of child pornography via the ARES peer-to-peer file sharing program. SA Giguere's subsequent investigation indicated that an association could be established between the computer with IP address 198.37.138.16 on the ARES file sharing network and the IP address most recently assigned to 10580 and 10578 Sugar Point Drive Northwest in Gould Township, Minnesota. (See Gen., Government's Ex. 2).

On February 13, 2014, SA Giguere applied for two warrants, one to search each of the houses on the property. (Id.). The Honorable Jana Austad, District Judge for the Ninth District of the State of Minnesota, determined that probable cause supported the issuance of the two search

---

[2] Except where expressly indicated otherwise, the facts are derived from the testimony of Special Agent David Giguere at the February 2, 2012, motions hearing.

warrants. (Id.). Only the warrant authorizing the search of Defendant's residence is presently at issue. That warrant authorized law enforcement officers to search Defendant's residence for computers, electronic devices, electronic storage media, cameras, papers, and data showing the receipt, possession, and/or distribution of child pornography and the sexual exploitation of children. (Id. at 10-11).

After the warrants were issued on February 13, 2014, eight law enforcement officers went to the property to execute the warrants for the two residences simultaneously. Six or seven of the officers, including SA Giguere, executed the warrant to search Defendant's residence. Only one of the officers executing the warrants was in uniform. The rest wore raid vests indicating their status as law enforcement officers. Defendant and his niece were at his residence when the officers executed the warrant. Defendant met the officers at or near the door of the residence. The officers informed Defendant that they suspected that someone at Defendant's residence had been downloading child pornography from the internet and that the officers were there to execute a warrant to search the residence. SA Giguere later testified that Defendant made at least one statement at that time that was not recorded.[3]

Upon the officers' entry, the uniformed officer took a position at the front door while the other officers, except for SA Giguere, began to search the residence. Shortly after entering, while still near the front door of the residence, SA Giguere approached Defendant and asked to speak to him. Defendant agreed, and he and SA Giguere took seats in the living room of Defendant's residence.  SA Giguere began the interview, which was recorded, by telling Defendant that he was not under arrest at that time. (Government's Ex. 1 at 00:30-00:35).  SA Giguere then read

---

[3]The record is otherwise silent regarding the statements Defendant made in response to the officers informing him about the search warrant and the reason for their presence. The Defendant's written motion, [Docket No. 22], does not specifically identify this statement, and his post-hearing briefing is apparently limited to a request that his recorded interview with SA Giguere be suppressed.

Defendant the <u>Miranda</u> warnings and asked if Defendant would be willing to speak with him. (<u>Id.</u> at 1:24-2:00). Defendant responded affirmatively, stating he had "no problem with that." (<u>Id.</u> at 2:00-2:08).

During the interview, Defendant admitted multiple times to having images of child pornography on his computer and to having obtained such images via internet file-sharing programs. (<u>See</u>, <u>Id.</u> at 4:30-5:15, 6:45-6:55, 15:00-15:03, 21:15-21:35, 23:15-23:42, 24:00-24:15, 34:40-34:50, 35:40-36:10, 36:30-36:40). SA Giguere asked Defendant to provide him with the password to Defendant's computer. (<u>Id.</u> at 3:50-3:55, 25:25-25:30, 30:00-30:05). Defendant initially refused the request, but ultimately provided the password to SA Giguere. (<u>Id.</u> at 3:55-4:00, 25:30-25:45, 30:05-30:10). The interview lasted approximately forty-six (46) minutes. (<u>See</u> <u>Gen.</u>, <u>Id.</u>). SA Giguere asked Defendant at the end of the interview whether he had participated voluntarily, to which Defendant responded that he had. (<u>Id.</u> at 45:10-45:15). SA Giguere asked Defendant whether SA Giguere had made any threats or promises to secure Defendant's participation, to which Defendant responded that SA Giguere had not. (<u>Id.</u> at 45:15-45:20).

Defendant did not appear to SA Giguere to have any difficulty understanding the questions during the interview. Defendant also appeared to provide coherent, appropriate responses to SA Giguere's questions. Defendant was not placed in handcuffs or otherwise physically restrained at any time before, during, or after the interview. The interview took place in the living room of the residence close to the front door.  Only the uniformed officer and one other officer were in or near the living room as SA Giguere interviewed Defendant, and the other officers were otherwise involved in searching the residence while the interview was going on.

Well after the interview had ended, while the officers were preparing to leave the residence, Defendant spontaneously told SA Giguere that one of the computer disks that had been seized during the execution of the search warrant contained images depicting Defendant and his daughter applying medicine to Defendant's granddaughter's pubic area. SA Giguere was not asking Defendant any questions prior to this statement by Defendant.[4]

The officers did not arrest Defendant at the conclusion of the search of his residence on February 13, 2014. Defendant was not arrested until after being indicted with the charges now against him.  Defendant then filed the motions to suppress his February 13, 2014, statement and the results of the February 13, 2014, search of his residence presently before the Court, [Docket Nos. 21, 22].

## II.  DEFENDANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED AS A RESULT OF SEARCH AND SEIZURE, [DOCKET NO. 21]

Defendant moves the Court for an order suppressing any physical evidence obtained as a result of the February 13, 2014, execution of the search warrant at his residence.  (Def.'s Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 21]).

At the February 2, 2015, motion hearing, Defense counsel represented on the record that the present motion is limited to a "four-corners" challenge concerning the sufficiency of the probable cause articulated in the affidavit submitted in support of the application for the state court search warrant.

### A.    Standard of Review

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. Amend. IV.

---

[4] Defendant's written motion, [Docket No. 22], does not specifically identify this statement, and his post-hearing briefing is apparently limited to a request that his recorded interview with SA Giguere be suppressed.

The Eighth Circuit has held that "[a]n affidavit establishes probable cause for a warrant if it sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched." United States v. Mutschelknaus, 592 F.3d 826, 828 (8th Cir. 2010) (internal quotation marks and citation omitted). "Probable cause is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" United States v. Colbert, 605 F.3d 573, 576 (8th Cir. 2010) (quoting Illinois v. Gates, 462 U.S. 213, 231 (1983)). Courts use a "totality of the circumstances test . . . to determine whether probable cause exists." United States v. Hager, 710 F.3d 830, 836 (8th Cir. 2013) (citation omitted).

The sufficiency of a search warrant affidavit is examined using "common sense and not a hypertechnical approach." United States v. Grant, 490 F.3d 627, 632 (8th Cir. 2007) (citation and internal quotations omitted). "In ruling on a motion to suppress, probable cause is determined based on 'the information before the issuing judicial officer.'" United States v. Smith, 581 F.3d 692, 694 (8th Cir. 2009) (quoting United States v. Reivich, 793 F.2d 957, 959 (8th Cir. 1986)). "Therefore, '[w]hen the [issuing judge] relied solely upon the supporting affidavit to issue the warrant, only that information which is found in the four corners of the affidavit may be considered in determining the existence of probable cause.'" United States v. Wiley, No. 09-cr-239 (JRT/FLN), 2009 WL 5033956, at *2 (D. Minn. Dec. 15, 2009) (Tunheim, J.) (quoting United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005); edits in Wiley). In addition, the issuing court's "'determination of probable cause should be paid great deference by reviewing courts,'" Gates, 462 U.S. at 236 (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)). "[T]he duty of a reviewing court is simply to ensure that the issuing court] had a 'substantial

basis for . . . [concluding]' that probable cause existed." Id. at 238-39 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)).

**B.      Analysis**

Defendant's written motion to suppress the results of the search and seizure is brief, generic, and devoid of factual or legal argument specifically addressing the search warrant at issue now before the Court. Because Defendant has offered no sufficiently specific factual or legal grounds for suppression in his moving papers, the Court could recommend summarily denying Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 21], solely on the basis that Defendant has failed to meet his burden of production. United States v. Jones, No. 09–cr–260 (DWF/RLE), 2009 WL 4723341, at *4 (D.Minn. Dec. 2, 2009) (Erickson, C.M.J.) (citing United States v. Mims, 812 F.2d 1068, 1074 (8th Cir. 1987); United States v. Quiroz, 57 F.Supp.2d 805, 822–23 (D.Minn.1999) (Mason, M.J.), adopted by 57 F.Supp.2d 805, 811 (D.Minn. 1999) (Kyle, J.)). Nonetheless, in an abundance of caution, the Court will address the merits of the Defendant's Motion.  See in accord, Id., (citing United States v. Edwards, 563 F.Supp.2d 977, 995 (D.Minn. 2008) (Mayeron, M.J.), adopted by 563 F.Supp.2d 977, 984 (D.Minn. 2008) (Frank, J.).

Defendant challenges the sufficiency of the probable cause supporting the warrant to search his residence. The application for the search warrant and supporting affidavit were drafted by SA Giguere on February 13, 2014. (Government's Ex. 2, 9). Based on the information provided in SA Giguere's affidavit in support of the application for the search warrant, Judge Austad had a substantial basis upon which to conclude that probable cause existed to issue the February 13, 2014, search warrant for Defendant's residence.

In his affidavit in support of the search warrant application, SA Giguere stated that, on August 23, 2013, he was conducting an investigation of the ARES P2P[5] file sharing network when he identified a computer at IP address 198.37.138.16 as possessing files of investigative interest. (Id. at 7).  Using the ARES "client" program, SA Giguere was able to download two video files that the computer at IP address 198.37.138.16 was making available. Id. One file depicted a prepubescent female approximately 10-12 years of age exposing her chest and genital region. Id.  The second file depicted an adult female and then an adult male engaging in sex acts with a prepubescent female approximately 3-5 years of age. Id.

On August 28, 2013, SA Giguere subpoenaed the internet service provider ("ISP") for IP address 198.37.138.16 seeking information about the subscriber to whom that IP address had been assigned on April 23, 2013. Id. He was informed that, due to its record retention practices, the ISP could not find conclusive evidence as to the subscriber who had been assigned to address 198.37.138.16 on August 23, 2013. Id.

On December 27, 2013, SA Giguere discovered that a computer associated with IP address 198.37.138.16 had also previously been seen on the Gnutella file sharing network and had made available for download on that network 143 files that were suspected to contain child pornography. Id.  SA Giguere also learned that Officer Dale Hanson of the Minneapolis Police Department, who is also member of the Internet Crimes Against Children task force, had previously queried that IP address in November of 2013. Id. at 8.

SA Giguere learned that the Gnutella file sharing network assigns a Global Unique Identifier (GUID) to each computer when the program is installed and that a GUID assigned to a specific computer will continue to be associated with that computer even if the computer uses

---

[5]According the SA Giguere's affidavit in support of the application for the February 13, 2014, search warrant, the ARES "client" program is a P2P file sharing program that allows users running the same program to share files with each other over the ARES network.  (Government Ex. 2 at 5-6).

different IP addresses. Id. The computer using IP address 198.37.138.16 on the Gnutella network had been assigned GUID #877A11B133FF2327E7F4E0FDD9BDF600. Id.

SA Giguere later learned that the computer that had been assigned GUID # 877A11B133FF2327E7F4E0FDD9BDF600 was seen on February 1, 2014, using the new IP address 198.37.137.34. Id. SA Giguere checked the history of IP address 198.37.137.34 and learned that, as of February 1, 2014, 466 suspected child pornography files were associated with a computer using that IP address. Id. SA Giguere then telephoned Officer Hanson to tell him that a case had been started regarding the person using the computer assigned that GUID number regarding the files shared on the ARES network. Id. Officer Hanson informed SA Giguere that a case had also been started regarding the user of that computer regarding the files that had been shared on the Gnutella network. Id. Officer Hanson told SA Giguere that he had obtained information that IP address 198.37.137.34 was associated with the physical address of 10580 Sugar Point Drive Northwest in Gould Township, Minnesota, and that Defendant's brother was the subscriber associated with that IP address. Id. SA Giguere also learned a second house with house number 10578 was also on the property associated with IP address 198.37.137.34 and that both houses shared that IP address. Id.

On February 10, 2014, SA Giguere learned that Defendant resided in one house on the property and that Defendant's brother lived in the other. Id. SA Giguere also received information that Defendant had been convicted in 1981 of criminal sexual conduct with a 5-year old child and in 1998 for criminal sexual assault of a 3-year old child and, as a result, was classified as a level 2 predatory offender. Id.

On February 12, 2014, SA Giguere received information dated March 11, 2013, indicating that two of Defendant's granddaughters, then ages four and five, were reported to have

been digitally penetrated be Defendant while they and their mother had been living with Defendant at 10578 Sugar Point Drive Northwest.

In this circuit, when determining whether probable cause exists to search a computer, an IP address assigned to a specific user at the time illegal internet activity associated with that IP address occurs has been found to be a sufficient basis to find a nexus between that unlawful use of the internet and a computer possessed by the user assigned that IP address. See, e.g., United States v. Stults, 575 F.3d 834, 844 (8th Cir. 2009) (affirming finding of probable cause where affidavit in support of search warrant application referred to IP address that had been used to access child pornography sites was traced to a defendant); see also e.g., United States v. Freeman, No. 10-cr-68 (JRT/RLE), 2010 WL 4386897, at *11 (D.Minn. May 13, 2010) (finding nexus between child pornography and a computer at a physical address based on an email account, an IP address, and the home address to which the IP address was assigned), adopted by 2010 WL 4386874 (D.Minn. Oct. 28, 2010).

In the present case, SA Giguere was able to download two files of apparent child pornography[6] from a computer with IP address 198.37.138.16 that was associated with the Gnutella file sharing network and which had been assigned GUID #877A11B133FF2327E7F4E0FDD9BDF600. SA Giguere's investigation later revealed that the computer assigned that GUID was also being used at IP address 198.37.137.34 and was offering for download additional files that were suspected of being child pornography. This new IP address 198.37.137.34 was at the time assigned to an account providing internet access to

---

[6]For the purpose of federal child pornography charges "child pornography" means any visual depiction . . . where . . . the visual depiction involves the use of a minor engaging in sexually explicit conduct. 18 U.S.C. § 2256(8)(A-C). In the context of digital images, "sexually explicit conduct" includes "graphic or simulated lascivious exhibition of the genitals or pubic area of any person[.]" 18 U.S.C. § 2256(2)(B)(iii).  There is no colorable argument that the files SA Giguere downloaded from the computer associated with GUID #877A11B133FF2327E7F4E0FDD9BDF600 did not arguably constitute child pornography.

Defendant's residence. Under Eighth Circuit case law, that connection is enough to establish probable cause to search Defendant's computer for images of child pornography. Judge Austad's finding of probable cause was also supported by SA Giguere's reference to Defendant's previous convictions for crimes involving unlawful sexual conduct with children and mention that Defendant, within the previous year, had been the subject of allegations that he had engaged in inappropriate sexual conduct with his prepubescent granddaughters. (See, United States v. McArthur, 573 F.3d 608, 613 (8th Cir. 2009) (noting that, under the totality of the circumstances, probable cause to search the defendant's computer for child pornography was supported by the defendant's previous convictions for multiple prior sex offenses and possession of a single image of child pornography).

Accordingly, the information provided in SA Giguere's affidavit in support of the application for the state court search warrant provided Judge Austad with a substantial basis to conclude that there was a reasonable probability that child pornography could be found on a computer at Defendant's residence.

However, even if the Court were to find that probable cause did not exist to believe that evidence of contraband could be found on the computer at Defendant residence, the Court concludes that Defendant's motion to suppress evidence gathered as a result of the execution of the search warrant should still be denied under the good faith exception set forth in United States v. Leon, 465 U.S. 897 (1984).

"Under the Leon good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant." Grant, 490 F.3d at 632 (citing Leon, 468 U.S. at 922). Even if the Court were now to conclude that the affidavit

supporting the February 13, 2014, search warrant application had not set forth facts within its four corners sufficient to demonstrate probable cause to search the computer at Defendant's residence, on the present record, law enforcement's good-faith reliance on the warrant ultimately issued by Judge Austad to search that computer militates against suppressing any evidence obtained during the search. See, Leon, 468 U.S. at 919-921 (exclusionary rule does not apply "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope"). See also, United States v. Johnson, 219 F.3d 790, 791 (8th Cir. 2000) ("Even if we thought the warrant affidavit did not establish probable cause, the good faith exception to the warrant requirement would apply because the affidavit was sufficient to allow an officer to reasonably believe probable cause existed.").

The Court's review of SA Giguere's affidavit in support of his application for the state court search warrant indicates that he presented Judge Austad with specific facts indicating that Defendant had a history of unlawful sexual conduct involving minor children and that at least one computer associated with Defendant contained what SA Giguere believed and described to be multiples image of child pornography that were being offered for peer-to-peer download on the internet.  Accordingly, when executing the search warrant for Defendant's residence, law enforcement relied in good faith on the search warrant which had been issued by Judge Austad based upon the application for a warrant setting forth those facts.

## C.    Conclusion

Because the affidavit authored by SA Giguere provided probable cause to believe that evidence of a crime could be found on a computer at Defendant's residence, and law enforcement, in any event, relied in good faith on Judge Austad's issuance of the February 13,

2014, search warrant, the Court recommends **DENYING** Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 21].

### III.   DEFENDANT'S MOTION TO SUPPRESS STATEMENTS, ADMISSIONS, AND ANSWERS [DOCKET NO. 22].

Defendant also moves the Court for an order suppressing all statements, admissions, and answers he made on February 13, 2014. (See Defendant's Motion to Suppress Statements, Admissions, and Answers, [Docket No. 22]). The scope of Defendant's motion is unclear.  In the text of Defendant's Motion to Suppress Statements, Admissions, and Answers, [Docket No. 22], Defendant generically asks the Court to suppress all statements made by him. (See, Id. at 1).  In Defendant's memorandum in support of his motion, however, Defendant specifically references only the statements he made while being interviewed by SA Giguere. (See, Def.'s Memorandum in Support of Motion to Suppress [Docket No. 28], at 6 of 6).  Based on the generic reference to "all statements, admissions and answers made by Defendant" in the text of Defendant's motion itself, [Docket No. 22], the motion to suppress when broadly read could be construed as challenging the statements Defendant made before, during, and after the interview with SA Giguere. Defendant's references only to the statements he made during the interview in his Memorandum in Support of the Motion to Suppress, [Docket No. 28] at 6 of 6, suggest that Defendant is now limiting his challenge to only those statements he made during the recorded interview.  Because the scope of Defendant's motion is unclear, the Court will address all of the statements that Defendant is alleged to have made on February 13, 2014.

Defendant, in essence, contends that his freedom of movement was restricted to the point that he was in custody during the execution of the search warrant on February 13, 2014, such that SA Giguere was required to provide him with a Miranda warning before interviewing him. Although Defendant admits that SA Giguere read him the Miranda warnings prior to Defendant

making his challenged recorded statements, he nonetheless argues generically that he had not voluntarily waived his <u>Miranda</u> rights before making those statements.

### A.  Standard of Review

"[<u>Miranda</u>] prohibits the government from introducing into evidence statements made by the defendant during a custodial interrogation unless the defendant has been previously advised of his [F]ifth [A]mendment privilege against self-incrimination and right to an attorney." <u>United States v. Chipps</u>, 410 F.3d 438, 445 (8th Cir. 2005) (citing <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966)). Accordingly, <u>Miranda</u> warnings are required for official interrogations where a person has been "taken into custody or otherwise deprived of his freedom of action in any significant way[.]" <u>Stansbury v. California</u>, 511 U.S. 318, 322 (1994) (quoting <u>Miranda</u>, 384 U.S. at 444). "Interrogation under <u>Miranda</u> includes not only express questioning but also its functional equivalent, such as 'any word or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." <u>United States v. Hull</u>, 419 F.3d 762, 767 (8th Cir. 2005) (quoting <u>Rhode Island v. Innis</u>, 446 U.S. 291, 300–01(1980)).

A defendant may waive the <u>Miranda</u> rights, "provided the waiver is made voluntarily, knowingly and intelligently." <u>Miranda</u>, 384 U.S. at 444.

### B.  Analysis

The statements that Defendant made on February 13, 2014, may be grouped into three categories: (1) statements Defendant made before being read a <u>Miranda</u> warning; (2) statements Defendant made during the recorded interview after being read the <u>Miranda</u> warning; and (3) the statement Defendant made when the officers were leaving his residence but after the interview by SA Giguere had previously been concluded.

1.  Initial Statements

At the evidentiary hearing, SA Giguere testified that Defendant made some initial statements to the officers after meeting them at the front door to his residence as the officers arrived to execute a search warrant. To be subject to suppression under Miranda, a statement must be made while in custody and in response to interrogation. United States v. McGlothen, 556 F.3d 698, 701 (8th Cir. 2009) (citing United States v. Londondio, 420 F.3d 777, 783 (8th Cir. 2005)).  The evidence in the record regarding the circumstances in which Defendant made his initial statements is that, before Defendant made them, the officers had merely told him that they were at the residence to execute a warrant based on suspicion that someone there had been sharing images of child pornography over the internet.

With regard to the initial statements Defendant made upon the officers' arrival at his residence and before being given a Miranda warning, the Court need not address whether the officers restrained Defendant's freedom to the point that he was in custody because the Court concludes that those initial statements were not the product of interrogation.  On the present record, the officers were not asking Defendant any direct questions that prompted Defendant to make his initial statements. Accordingly, the officers' actions could have constituted interrogation only if they were the functional equivalent of express interrogation. See, Innis, 446 U.S. at 301 (defining interrogation as "express questioning or its functional equivalent"). Functional equivalents of express questioning include "words or action on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Id. At the point at which Defendant made his initial statements, the officers' only actions were to enter the house, identify

themselves, and inform Defendant of the purpose for their presence.  The Eighth Circuit has explained:

> Whether a particular statement constitutes an interrogation depends upon the circumstances of each case, but we generally do not find a mere factual statement to be an interrogation where it serves to inform the suspect as to the status of his case or the investigation into his activities. United States v. Wipf, 397 F.3d 677, 685 (8th Cir.2005) (holding that an officer's post-invocation statement that he wanted to tell the defendant "the situation, and explain the charges against him" does not amount to custodial interrogation); see also Arizona v. Roberson, 486 U.S. 675, 687, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988) (explaining that even after a suspect has requested counsel, police "are free to inform the suspect of the facts of a second investigation as long as such communication does not constitute interrogation").

Hull, 419 F.3d at 767.

The officers merely identifying themselves and informing Defendant in the present case of the purpose of their presence can be fairly described, at most, as factual statements informing Defendant of the status of the investigation concerning his activities. As such, the officers' actions were not the functional equivalent of interrogation, and the Defendant is not entitled to have his initial statements suppressed pursuant to Miranda. See, United States v. Shannon, 06-6 (JNE-JJG), 2006 WL 1579852, at *3 (D. Minn. June 1, 2006) ("Where officers have not made any words or actions that would result in an incriminating response, and a suspect makes a spontaneous statement, then that statement does not violate the privilege against self-incrimination."); see also, McGlothen, 556 F.3d at 701 ("Voluntary statements not in response to an interrogation are admissible with or without Miranda warnings.").

Based on the foregoing, the Court recommends **DENYING** Defendant's Motion to Suppress Statements, Admissions, and Answers, [Docket No. 22], to the extent the motion pertains to the initial statements Defendant made before being read the Miranda warnings.

2.  Interview Statements

The Court next considers the statements that Defendant made in his living room while being interviewed by SA Giguere. Defendant contends that the presence of other officers in his home while executing the search warrant restricted his freedom to the point that he was in custody for the purposes of Miranda, and that the circumstances under which the interview took place rendered his waiver of his Miranda rights involuntary. The Government argues that Defendant was not in custody during the interview and, in any event, Defendant was provided with Miranda warnings which he voluntarily waived.

Miranda warnings are required for official interrogations where a person has been "taken into custody or otherwise deprived of his freedom of action in any significant way[.]" Stansbury v. California, 511 U.S. 318, 322 (1994) (quoting Miranda, 384 U.S. at 444).  There is no dispute that SA Giguere's direct questioning of Defendant would constitute interrogation for the purposes of Miranda if Defendant was in custody.  Accordingly, the threshold issue is whether Defendant was in custody. See, United States v. Axsom, 289 F.3d 496, 500 (8th Cir. 2002) ("The undisputed facts establish that [the officers] were interrogating [the defendant]. To determine whether the Miranda rule applies, we must examine whether [the] interrogation was custodial.").

The Eighth Circuit has explained:

[W]e outlined six common indicia of custody which tend either to mitigate or aggravate the atmosphere of custodial interrogation. The indicia are: (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.

> The first three indicia are mitigating factors which, if present, mitigate against the existence of custody at the time of questioning. Conversely, the last three indicia are aggravating factors which, if present, aggravate the existence of custody. We have emphasized these six indicia of custody are representative and are not exclusive. A finding of custody does not require the factual circumstances of a case to present all indicia; and a particularly strong showing of one factor may compensate for a lesser or non-existent showing of another factor.

Id., at 500-01 (internal citations omitted). "These factors, however, are not exclusive, and custody cannot be resolved merely be counting up the number of factors on each side of the balance and rendering a decision accordingly." United States v. Flores-Sandoval, 474 F.3d 1142, 1147 (8th Cir. 2007) (internal citation and quotations marks omitted). "The analysis depends upon a review of the totality of the circumstances, and [t]he ultimate test is whether a reasonable person in that position would have felt free to end the interview." United States v. Sanchez, 676 F.3d at 630–31 (8th Cir. 2012) (internal citation and quotation marks omitted, alteration in Sanchez).

   The first factor weighs heavily in favor of a finding that the suspect is not in custody when officers clearly inform the suspect that he is free to leave or decline questioning. Id. at 631. In the present case, however, this factor does not weigh as strongly in favor of finding that Defendant was not in custody as SA Giguere told Defendant only that he was not going to be arrested but did not inform Defendant that he was free to terminate the interview. See, United States v. Ollie, 442 F.3d 1135, 1138 (8th Cir. 2006) ("While advising someone that he or she is not under arrest helps to mitigate an interview's custodial nature, an explicit assertion that the person may end the encounter is stronger medicine. Such a statement provides an individual with a clear understanding of his or her rights and generally removes any custodial trappings from the questioning." (citing United States v. Czichray, 378 F.3d 822, 826 (8th Cir. 2004), cert. denied, 544 U.S. 1060 (2005)). In addition, SA Giguere later equivocated somewhat during the

interview's second half by telling Defendant that he was uncertain whether he was going to arrest Defendant. (See Government's Ex. 1 at 25:55-26:01). Accordingly, although SA Giguere's informing Defendant at the outset of the interview that he was not under arrest does mitigate in favor of finding that Defendant was not in custody, it does so only moderately.  Ollie, 442 F.3d at 1138.

The record presently before the Court is silent regarding whether Defendant attempted to move about during the interview and whether the officers attempted to restrict any such movement.  Accordingly, this second mitigating factor does not weigh for or against a finding that Defendant was not in custody. See, Id. ("The record is silent on this issue because Mr. Ollie never tried to move about or leave the interview room. Because the record is thin, we believe that it is impossible to determine if Mr. Ollie retained his freedom of movement throughout the questioning.").

The third factor, which addresses whether Defendant initiated contact with the police or voluntarily acquiesced to the questioning by the police, does mitigate in favor of finding that Defendant was not in custody. See, Axsom, 289 F.3d at 501 (concluding that the third factor mitigated a finding that the defendant had been in custody where he voluntarily acquiesced to police questioning even though he didn't initiate contact with the police).

The fourth factor, which addresses whether law enforcement used strong arm tactics against a suspect, is not present here.  There is nothing in the record to indicate that the officers used threats or any coercive methods when interviewing Defendant.

The fifth factor, which addresses whether the questioning took place in a "police dominated atmosphere," does not weigh in favor of finding that Defendant was in custody. Although Defendant argues that the presence of six to seven officers executing a search warrant

in his home restricted his freedom, the Eighth Circuit has found that the presence of an even greater number of officers in the home of an interviewed suspect did not render an interview custodial.  See, Id. (concluding that mere presence of nine officers in the suspect's home was not sufficient to find that the atmosphere was police dominated).  Moreover, the interview was conducted in the familiar surroundings of the Defendant's living room.  See, Id. ("When a suspect is interrogated in the comfort and familiarity of his home, a court is less likely to find the circumstances custodial." (citing United States v. Erving L., 147 F.3d 1240, 1247 (10th Cir. 1998)).  In the present case, only SA Giguere was immediately present while interviewing the Defendant and only two other officers were nearby the living room and the front entry during the interview.

The sixth factor, which addresses whether Defendant was arrested at the end of the interview, does not aggravate in favor of finding that Defendant was in custody.  Defendant was in fact not arrested upon the conclusion of his interview with SA Giguere. Indeed, at no time during the search of his residence was Defendant ever even handcuffed or physically restrained by police

Upon considering the totality of the circumstances, the Court concludes that a reasonable person in Defendant's position would have felt free to terminate the interview and, as such, Defendant was not in custody.  Because Defendant was not in custody for the purposes of Miranda, Defendant is not entitled to have the statements he made during the interview suppressed.[7]

---

[7]Since the Court concludes that Defendant was not in custody for the purposes of Miranda, the Court need not reach Defendant's alternative argument that, even though he received the Miranda warnings, his waiver of his Miranda rights was not voluntary. However, were the Court compelled to do so, on the present record, it would find that the Defendant's waiver was voluntary.

Based on the foregoing, the Court recommends **DENYING** Defendant's Motion to Suppress Statements, Admissions, and Answers, [Docket No. 22], to the extent the motion pertains to the statements Defendant made while being interviewed in his living room by SA Giguere.

3.   Post-interview Statement

Lastly, the Court considers the statement Defendant made well after the interview by SA Giguere had concluded and while the officers were in the process of leaving his house. The Court has already concluded that the mere presence of the officers while executing the search warrant did not restrict Defendant's freedom to the point that he was effectively in custody for the purposes of Miranda. That conclusion is even stronger when a statement is made in the context of officers reducing their potential for influence over a situation by withdrawing from a residence.  Even assuming, solely for the sake of argument, that the officers retreating presence had effectively placed Defendant in custody for the purposes of Miranda, there is no basis to conclude that the officers were "interrogating" Defendant by preparing to exit the residence. SA Giguere testified that the officers were not as this time asking Defendant any express questions. Nor is there anything in the record to indicate that the officers had a reason to believe that their actions to withdraw from his residence would elicit an incriminating response from Defendant. See, Innis, 446 U.S. at 301 (defining interrogation to include "words or action on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect."); see also, McGlothen, 556 F.3d at 701 ("Voluntary statements not in response to an interrogation are admissible with or without Miranda warnings.").

Based on the foregoing, the Court recommends **DENYING** Defendant's Motion to Suppress Statements, Admissions, and Answers, [Docket No. 22], to the extent the motion

pertains to the spontaneous statement Defendant made while the officers were preparing to leave his residence.

## IV.    CONCLUSION

Based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.   Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 21], be **DENIED**; and,

2.   Defendant Motion to Suppress Statements, Admissions, and Answers, [Docket No. 22], be **DENIED**.

Dated: February 18, 2015                                s/Leo I. Brisbois
                                                        Leo I. Brisbois
                                                        U.S. MAGISTRATE JUDGE

## N O T I C E

Pursuant to Local Rule 72.2(b), and as discussed with counsel at the time of the February 2, 2015, motions hearing, in light of the pending March 30, 2015, trial date, a shortened period for objections to this Report and Recommendation is necessitated. Therefore, any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by March 4, 2014** a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections **by March 17, 2014**. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.