UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No.:  14-CR-323 (DSD/LIB)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>     v.<br><br>REX LEE FURMAN,<br><br>            Defendant. | **GOVERNMENT'S TRIAL BRIEF** |

The United States of America, by and through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, Melinda A. Williams, Assistant United States Attorney, and Alexandra R. Gelber, Assistant Deputy Chief, hereby submits this trial brief outlining the evidence the government intends to produce at trial. This brief is also submitted in support of the government's motions *in limine*.

## FACTUAL AND PROCEDURAL BACKGROUND

The defendant in this case, Rex Furman, is 52 years old.  The defendant is a serial sex offender with a sexual preference for young, pre-pubescent girls.  The defendant has been twice been convicted of raping young girls in his family, specifically, his five-year-old stepsister and his ten-year-old daughter.[1]  The defendant served a lengthy prison term

---

[1] On October 9, 1981, while the defendant was babysitting his five-year-old stepsister, N.H., he raped her orally, vaginally, and anally.  Although the defendant initially denied his crimes against N.H., he later confessed to the sexual abuse and, on December 15, 1981, pled guilty to Criminal Sexual Conduct (Fourth Degree) in Wright County, Minnesota.  In July 1998, the defendant's then ten-year-old daughter, R.F., told law enforcement that the defendant had been, repeatedly and for some time, molesting

1

for raping his daughter and is required to register as a sex offender until 2021.

In November 2011, the defendant was released from prison. The defendant moved to 10578 Sugar Point Drive, Federal Dam, Minnesota. The defendant's residence was a second house located on the property of his brother, Michael Furman. Michael Furman and his family lived in the main house on the property, 10580 Sugar Point Drive, Federal Dam, Minnesota. Both residences shared a driveway and internet access (and thus had the same IP addresses). In late August 2012, the defendant brought R.F.'s youngest daughter, A.Z. (then age three), to live with him at his home. Several weeks later (in late September/early October), R.F. and her three other children, including S.Z. (then age five), also moved in with the defendant.

The evidence will show that, in August and September 2012, when the defendant had access to his two young granddaughters, he sexually abused them both. The defendant took photographs and a short video of this abuse and saved those images with his otherwise substantial collection of child pornography (which reflects the defendant's preference for pre-pubescent girls and his interest in incest-themed images). Due to allegations of sexual abuse, both of the granddaughters were removed from the defendant's home in March 2013.

---

her vaginally and forcing her to perform oral sex on him. On January 13, 1999, the defendant was convicted after a bench trial of Criminal Sexual Conduct (First Degree) in Hennepin County, Minnesota, for his abuse of R.F. The government has produced to the defense other allegations of improper contact with minors by the defendant that did not result in convictions. The government is not seeking to admit these other allegations in its case-in-chief at trial, though these would be potentially admissible in rebuttal and/or during a cross-examination of the defendant.

In August 2013, law enforcement began what was otherwise a fairly straightforward distribution of child pornography investigation. In August 2013 through January 2014, two different undercover agents (SA David Giguere from the Bureau of Criminal Apprehension ("BCA") and Officer Dale Hanson of the Minneapolis Police Department ("MPD")) downloaded child pornography from the same IP addresses over two different peer-to-peer file sharing networks.

On February 13, 2014, law enforcement obtained and executed a search warrant at the defendant's home, 10578 Sugar Point Drive, Federal Dam, Minnesota, which was connected to the above-referenced IP addresses.[2] Law enforcement seized numerous items of evidentiary value from defendant Furman's home, including two computers and several electronic storage devices.

When law enforcement arrived at the defendant's home, the defendant volunteered that he knew why law enforcement was present, but that he wasn't "trying to do anything illegal" and that "most of it is art." The defendant then waived his *Miranda* rights and spoke with law enforcement at length. During this recorded conversation, the defendant said that he was the only one who had access to his computer and files, all of which were password protected, that he bought his computer new, and that everything on the computer was his and his alone. The defendant admitted to downloading and using a

---

[2]   Law enforcement additionally obtained and simultaneously executed a second search warrant at 10580 Sugar Point Drive, the residence of the defendant's brother, Michael Furman, which shared those same IP addresses. Law enforcement seized zero items from Michael Furman's residence. The defendant was very clear in his recorded statement that all of the child pornography belonged to him.

peer-to-peer file sharing program to obtain child pornography and admitted to, at times, leaving files in the "shared" folder. The defendant admitted to using search terms such as "daddy daughter" and "incest" in seeking out child pornography. The defendant estimated that law enforcement would find about five thousand child pornography images on his computers and storage devices. As the agents were leaving the defendant's residence, in comments that were initially unrecorded, the defendant told the agents that they might find photographs/videos of the vaginal areas of his granddaughters (A.Z. and S.Z.) on the CDs they had seized. As is discussed in more detail below, the defendant then repeated similar comments in recorded interviews.

In a forensic review of the items seized from the defendant's computers and discs, law enforcement found more than five hundred videos and electronic images of child pornography, which generally featured pre-pubescent girls. The titles of many of the defendant's images and videos, as well as the search terms he used to obtain these images, reflect an interest in incest-themed child pornography.

Law enforcement also found two Maxell mini-discs that each contained a series of photos/videos of the defendant abusing one or both of his granddaughters. The photographs and videos were both taken using a hand-held Sony video camera which recorded the images/videos directly on the mini-discs. Unsurprisingly, all of these images were taken in late August/early September 2012, when the defendant had access to his granddaughter(s). The first series of images (charged in Counts 9 – 13 of the indictment) was taken on August 26, 2012 and depicts the vaginal area of a real child.

4

Because there are no facial shots of the victim(s), it is unclear which granddaughter is depicted in these images.[3] The second series of images (charged in Counts 1 – 8 of the indictment) was taken on September 3, 2012 and depicts the defendant molesting A.Z. as she slept in a cushioned chair. The initial photos clearly show A.Z.'s face as she is sleeping. A.Z. is "posed" in a second photo. The photos then show a hand pulling back A.Z.'s underwear and molesting her vaginally and anally.

In investigating this case, law enforcement learned that, after A.Z. and S.Z. were removed from the defendant's home in March 2013, they were both enrolled in ongoing "play therapy," and that during the course of this therapy both girls revealed that they had been sexually molested by the defendant in a manner that is consistent with the "production" images of abuse charged in Counts 1 – 13 of the indictment. Specifically, in May 2013, both A.Z. and S.Z. told their therapist that the defendant (their "grandfather") put medicine on their genitals ("private parts"). In August 2013, A.Z. told her therapist that she remembered the defendant coming into her room while she was sleeping and taking off her clothes and touching her genitals.

When law enforcement later spoke with the defendant about the images of sexual abuse of A.Z. and S.Z., the defendant admitted his involvement but provided a variety of "innocent" explanations. At the time of the search warrant, the defendant initially said that, in the seized materials, law enforcement would find a video of him and R.F.

---

[3] In statements to law enforcement, the defendant confirmed he was involved in the production of the images, but vacillated on whether the images were of S.Z., A.Z., or both of the girls.

applying medication to A.Z. and S.Z.'s vaginal areas, and that they had taken the video to "cover our assess." Later, the defendant said that he and R.F. took the pictures for "documentation purposes," because a child was allegedly sexually assaulting A.Z. and S.Z. and the photos were taken so that the defendant "could prove that nothing was wrong with them." The defendant further said that he took A.Z. and S.Z. to the doctor, where he reported abuse of A.Z. and S.Z. and asked the doctor to see if there was "any damage" to A.Z. or S.Z.; the pictures were taken prior to that visit "to cover our butts." (In fact, the government has obtained medical records for A.Z. and S.Z. and spoken with the treating physicians; not only did no such disclosure occur, but neither girl was suffering from any vaginal/yeast infections during the relevant time periods and, as such, no medications or creams were recommended to either girl.)

As to the "production" images of A.Z. charged in Counts 1 – 8 (the photographs of A.Z. being molested as she slept in a cushioned chair), when questioned as to these images, the defendant initially denied all knowledge. He then asserted that one of the girls must have been "playing around with the camera or something" and ultimately concluded, "I might have . . . tried to reach down. But, I'm not sure. But, yeah. All we were, uh, like I said, uh, documentation."

On October 7, 2014, a grand jury returned an eighteen count indictment that charges the defendant with Production of Child Pornography (Counts 1 – 13), Distribution of Child Pornography (Counts 14 – 15), Receipt of Child Pornography (Count 16), Possession of Child Pornography (Count 17), and Commission of a Felony

Offense Involving a Minor When Required to Register as a Sex Offender (Count 18).[4]

## MOTIONS IN LIMINE

The government has filed the following motions *in limine*, each of which are addressed in greater detail in the government's briefs.

### (1) Motion to Admit Hearsay Statements Under Rules 803(4), 807

The government seeks to admit the hearsay statements of A.Z. and S.Z. through the testimony of their therapist, Vicky Kinney. The statements of the girls are non-testimonial and are admissible both under the medical treatment exception to the hearsay rule (Rule 803(4)) and/or under the residual hearsay exception (Rule 807). If admitted, the government has offered to stipulate to this testimony to mitigate the prejudicial impact to the defendant.

### (2) Motion to Admit Evidence of the Defendant's Prior Convictions for Child Molestation Pursuant to Rule 414

The government seeks to admit the fact of and circumstances surrounding the defendant's two prior child molestation convictions. Under Rule 414, this evidence is presumptively admissible to prove the defendant's propensity to molest children, and

---

[4] The government intends to return a superseding indictment on October 14, 2015. This superseding indictment, which was provided to the defense on October 7, 2015, does not alter any of the charges against the defendant but, *inter alia*, substitutes four of the charged possession and receipt child pornography videos for other child pornography videos in the defendant's collection (all of which have been available to the defense for inspection since the inception of the case). It also adds the production images to the possession count, and modifies the date for the receipt count. The changes have been discussed with defense counsel and the government does not anticipate that the superseding indictment will have any impact on the trial date.

more specifically in this case, to prove the defendant's "propensity to molest young girls who are actual or virtual members of his family or live in his home when presented with an opportunity to do so undetected." *United States v. Bentley*, 561 F.3d 803, 815 (8th Cir. 2009). This evidence is also admissible under Rule 404(b). Again, if admitted, the government has offered to admit this evidence pursuant to a stipulation to mitigate the prejudicial impact to the defendant.

### (3) Motion to Admit Evidence of the Defendant's Prior Bad Acts as *Res Gestae* Evidence and/or Pursuant to Rule 404(b)

The government seeks to admit the following evidence as *res gestae* evidence intrinsic to the crimes charged and/or pursuant to Rule 404(b): (1) evidence that the defendant possessed, received, and distributed additional images and videos of child pornography and erotica, both digital images and hard copy images, beyond those charged in the indictment, as well as evidence of the defendant's search terminology in seeking out digital child pornography and the names of the child pornography files; (2) evidence that the defendant possessed images of his granddaughters, A.Z. and S.Z., taking a bath; (3) evidence that, as a part of his sex offender treatment, the defendant was informed of the illegality of possession of child pornography; and (4) evidence that the defendant possessed a poem entitled "The Sex Defender" on his computer that glorifies child sexual assault. All of this evidence is admissible either as *res gestae* evidence (*i.e.*, it is inextricably intertwined with and direct proof of the charged crimes) and/or as Rule 404(b) evidence of the defendant's knowledge, intent, or absence of mistake or accident.

**(4)** **Motion to Preclude Defense from Referring to Possible Punishment**

The government moves to preclude the defense from referring to the potential sentence or possible punishment of the defendant at trial. Here, the defendant is facing, *inter alia*, life in prison. Certainly, it is improper for either the defense or prosecution to comment or argue his potential punishment in the presence of the jury, particularly any mandatory minimum sentence. "'The argument of counsel, generally speaking, should be confined to the evidence that has been produced and to such inferences as may reasonably be drawn therefrom.'" *Ferguer v. United States*, 302 F.2d 214, 253 (8th Cir. 1962) (*quoting Brennan v. United States*, 240 F.2d 253, 263 (8th Cir. 1957)).

(5) **Notice of Enhanced Penalties**

The government has filed a notice of enhanced statutory penalties, which sets forth the various enhanced penalties that are applicable to the defendant, who is a registered sex offender and has twice been convicted of child molestation offenses. The notice sets out the findings that must be made by the Court and/or jury to trigger these enhanced penalties. Notably, a bifurcated proceeding in which the jury would consider the applicability of Section 2260A may be necessary if the jury convicts the defendant for any one of Counts 1 – 13 and if the Court denies the government's motion to admit prior convictions under Rule 414. (If these convictions are otherwise admitted at trial, the government understands that the defense will not request a bifurcated proceeding.)

A bifurcated proceeding or a special jury question may also be needed to determine whether the defendant is subject to the mandatory life penalty under 18 U.S.C.

§ 3559(e).  As held in *United States v. Doss*, 630 F.3d 1181 (9th Cir. 2011), Section 3559(e) presents two distinct inquiries: whether the defendant has a prior sex conviction, and whether the offense involved a minor victim.  630 F.3d at 1197.  The first prong is a question of law to be resolved per *Descamps v. United States*, 133 S.Ct. 2276 (2013), *Taylor v. United States,* 495 U.S. 575 (1990), and *Shepard v. United States,* 544 U.S. 13 (2005).  The second prong is a fact which increases either or both the minimum and maximum penalty the defendant would face.  Therefore, under *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), and *Alleyne v. United States,* ––– U.S. –––, 133 S.Ct. 2151 (2013), the jury must find beyond a reasonable doubt that at least one of the defendant's prior convictions involved a minor under the age of 17.  *Doss*, 630 F.3d at 1197.  If the defendant's prior convictions are admitted at the trial, then this question could be resolved by a special interrogatory, as proposed in the government's jury instructions. Dkt. 62, pg. 38.[5]  If the prior convictions are not admitted and the defendant is convicted of at least one of the production counts, then a bifurcated proceeding would be needed to determine the applicability of Section 3559(e).

---

[5]    The parties are discussing a potential stipulation to the fact that the defendant's prior convictions qualify as predicates under Section 3559(e).

# EVIDENTIARY ISSUES

### (1)   Presentation of Child Pornography Evidence to the Jury

The indictment charges the defendant with, *inter alia*, producing, receiving, distributing, and possessing numerous specific images and videos of child pornography. The government is mindful that while it must ensure that it meets its burden of proof, it also seeks to avoid re-victimizing the minors depicted in the images and videos and to minimize the negative impact on jurors and court staff.  Accordingly, the government intends to limit its presentation of the child pornography images and videos during trial as follows.  Because identity appears to be at issue, the government will show the jury the unredacted production images and videos as is necessary to prove its case.  However, with respect to the charged videos, the government intends to limit its display of the charged videos during trial to very short excerpts.  The government will offer into evidence a DVD containing the full videos and the clips shown during trial.  *See, e.g.*, *United States v. Ballard*, 2011 WL 6223122, at *1 (11th Cir. Dec. 15, 2011) (affirming government's introduction of child pornography files as well as file names to satisfy the government's burden related to knowledge and intent); *United States v. Becht*, 267 F.3d 767, 771 (8th Cir. 2001).

### (2)   Referring to the Minor Victims

The government will be referencing the two minor victims in this case (A.Z. and S.Z.) by their full names during the course of trial.  This is necessary, *inter alia*, because the defendant references the victims by their first names in his recorded statement.

11

Therefore, the government hereby moves the Court to either seal any trial transcripts containing the full names of the victims and/or to redact the same trial transcripts down to the initials of the victims. This step is appropriate and necessary to protect the privacy of the minor victims. *See* 18 U.S.C. § 3509(d)

### (3)  **Stipulations**

The government and the defendant have agreed on a stipulation that the charged images for the distribution, receipt, and possession counts (Counts 14 – 17) depict "real children" and that these images traveled in interstate commerce. The government and the defendant have further agreed on a stipulation concerning the IP addresses used by the defendant.

The defendant is considering additional stipulations that would shorten the trial and, in the government's view, reduce the prejudicial impact of certain evidence on the defendant. Some of these stipulations (*i.e.*, stipulations concerning the defendant's prior convictions for sexual molestation, the statements of A.Z. and S.Z. identifying the defendant as their abuser) are dependent upon the Court's rulings on the government's pending motions *in limine*.

As of this time, the defendant has chosen not to stipulate to the fact that the production images/video (Counts 1 – 13) were produced using materials (in this case, a hand-held Sony video camera and Maxell mini-DVDs) that were manufactured outside of the state of Minnesota. The government recently produced additional materials to the defense concerning the manufacture of these items; this may result in a stipulation as to

interstate nexus for the production images. The parties will continue to keep the Court apprised as to the status of this and other pending stipulations.[6]

### (4) **<u>Admission of Certified Business Records</u>**

If the defendant does not stipulate to interstate nexus for the production images (Counts 1 – 13), the government intends to offer testimony and/or certified business records under Rule 902(11) to prove that the hand-held Sony video camera and Maxell mini-DVDs were manufactured outside of the state of Minnesota. The latter documents are business records that fall under the hearsay exception set forth in Federal Rule of Evidence 803(6). Federal Rule of Evidence 902(11) provides that certified domestic business records of regularly conducted activities can be self-authenticating and therefore admissible under Federal Rule of Evidence 803(6) if accompanied by a written

---

[6] The government provided notice to the defendant of its intent to introduce into evidence the trade stamp located on the DVDs that contain the production images, pursuant to the residual hearsay exception set forth in Rule 807. The stamp indicates that the discs are made in Taiwan. As noted by the First Circuit in *United States v. Burdulis*, 753 F.3d 255, 263 (1st. Cir. 2014), such inscriptions have the equivalent circumstantial guarantees of trustworthiness because "inscriptions indicating foreign origin are regulated, *see* 19 U.S.C. § 1304, and federal law prohibits false or misleading designations of origin, *see* 15 U.S.C. § 1125(a). Moreover, under the federal rules of evidence trade inscriptions are self-authenticating, Fed.R.Evid. 902(7), meaning they 'require no extrinsic evidence of authenticity in order to be admitted,' Fed.R.Evid. 902." This evidence is offered as evidence of a material fact, namely, that the images were produced using materials that had been shipped or transported in or affecting interstate or foreign commerce. The trade stamp is more probative on the point for which it is offered than any other evidence that the government can obtain through reasonable efforts, and admitting it will best serve the purposes of these rules and the interests of justice.

declaration from a records custodian or other qualified person certifying that the records:

   a.   were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters;

   b.   were kept in the course of a regularly conducted activity; and

   c.   were made by the regularly conducted activity as a regular practice.

The Advisory Committee Notes to the 2000 Amendments make it clear that a declaration that satisfies 28 U.S.C. § 1746 would satisfy the declaration requirements of Federal Rule of Evidence 902(11).

   (5)   **Admission of Summary Charts**

To streamline the trial and deal with the significant volume of child pornography, the government intends to offer summary charts identifying the charged images and videos. Included in these charts will be information about the file names, full path of the files, the location where each image and/or video was stored, and other information about the images and videos including EXIF data, dates of creation and a description of the content.[7] The admissibility of summary charts, graphs, and exhibits rests within the sound discretion of the trial judge. *United States v. Green*, 428 F.3d 1131, 1134 (8th Cir. 2005) (citing *United States v. King*, 616 F.2d 1034, 1041 (8th Cir. 1980)). The content of voluminous evidence, which cannot conveniently be examined in court, may be presented in the form of a chart, summary of calculation. Fed. R. Evid. 1006. Such summary

---

[7] This is similar to the charts created by CFE Brown and admitted in *United States v. Chase*, 11-cr-150 (JRT/JSM) and *United States v. Needham*, 13-cr-111 (JRT/LIB).

evidence is properly admitted when (1) the charts "fairly summarize" voluminous trial evidence; (2) they assist the jury in "understanding the testimony already introduced"; and (3) "the witness who prepared the charts is subject to cross-examination with all documents sued to prepare the summary." *King*, 616 F.2d at 1041. Charts properly admitted under Rule 1006 can be treated as evidence and allowed in the jury room during deliberations; the district court may issue proper limiting instructions. *See United States v. Passick*, 849 F.2d 332, 339 (8th Cir. 1988).

Dated:  October 13, 2015                    Respectfully Submitted,

                                            ANDREW M. LUGER
                                            United States Attorney

                                            */s/ Melinda A. Williams*

                                            BY:  MELINDA A. WILLIAMS
                                            Assistant U.S. Attorney
                                            Attorney ID No. 491005DC

                                            ALEXANDRA R. GELBER
                                            Assistant Deputy Chief
                                            DC Bar No. 473773