United States Court of Appeals
For the Eighth Circuit
_____

No. 16-3238
_____

United States of America

*Plaintiff - Appellee*

v.

Rex Lee Furman

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: June 7, 2017
Filed: August 14, 2017

_____

Before WOLLMAN, ARNOLD, and GRUENDER, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

    A jury convicted Rex Lee Furman of thirteen counts of producing child pornography, in violation of 18 U.S.C. §§ 2, 2251(a), 2251(e), and 3559(e); two counts of distributing child pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1); one count of receiving child pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1); one count of possession of child pornography, in violation

of 18 U.S.C. § 2252(a)(4)(B) and (b)(2); and one count of commission of a felony offense involving a minor when required to register as a sex offender, in violation of 18 U.S.C. § 2260A. The district court[1] sentenced Furman to life imprisonment, as well as to a 120-month consecutive sentence. Furman appeals, arguing that the district court erred in denying his motion for judgment of acquittal on the production and distribution counts and in admitting evidence of his 1999 conviction of first-degree criminal sexual conduct. He also contends that his sentence violates the Eighth Amendment's prohibition on cruel and unusual punishment. We affirm.

In 1981, when Furman was eighteen years old, he sexually abused his five-year-old stepsister. He pleaded guilty in Wright County, Minnesota, in November 1981 to criminal sexual conduct in the fourth degree. He admitted that he had touched the victim's genitals for the purpose of his own sexual gratification.

In 1998, Furman sexually assaulted his ten-year-old daughter, R.F., by inserting his finger into her vagina and by forcing her to perform oral sex on him. He was found guilty in Hennepin County, Minnesota, in January 1999 of engaging in criminal sexual conduct in the first degree. Furman was thereafter required to register as a sex offender.

Upon his release from prison in November 2011, Furman moved into a house on his brother's property, where he had access to the Internet. Furman brought R.F.'s three-year-old daughter, A.Z., to live with him in August 2012. In September or October 2012, R.F. and her three other children—a baby boy, a five-year-old girl named S.Z., and a seven-year-old boy named N.Z.—also moved in with Furman. The children were removed from Furman's home in March 2013.

---

[1] The Honorable David S. Doty, United States District Judge for the District of Minnesota.

Furman used peer-to-peer file-sharing networks to download hundreds of images of child pornography. From at least December 2012 through August 2013, Furman used Ares 2.1.9 file-sharing software to access the Ares file-sharing network from his eMachines computer. From at least October 2013 through February 2014, Furman used LimeShare Pro 2.5 and 2.6 file-sharing software to access the Gnutella file-sharing network from his HP computer.

When he installed the LimeShare Pro 2.6 software, Furman was prompted to answer questions regarding sharing his files with other users. One prompt required him to choose a folder in which his files would be downloaded. The prompt stated, "This folder will also be shared with other [G]nutella users by default." Furman chose to download files into and share files from the software's default folder called "Shared." Whenever his computer was running the LimeShare Pro program, Gnutella users could download files from Furman's shared folder.

Special Agent David Giguere worked in the predatory crimes unit of the Minnesota Bureau of Criminal Apprehension. On August 23, 2013, Giguere used law enforcement software to identify computer users who were making child-pornography files available for others to download on the Ares file-sharing network. Giguere downloaded two child-pornography videos from the IP address associated with Furman, including one entitled "1(2)(3)(2).mpg."

Minneapolis Police Officer Dale Hanson was assigned to the Federal Bureau of Investigation's child exploitation task force. From October 2013 through January 2014, Hanson used law enforcement software to search file-sharing networks for child pornography. During that time, Hanson used the Gnutella file-sharing network to download eighteen images of child pornography from the shared folder on Furman's HP computer. Among the files Hanson downloaded was one entitled,

"Private Daughter Mellony stolen pedo lolita pthc hussyfan preteen nude (10yo) 01(1).jpg" (Private Daughter Mellony.jpg).[2]

On February 13, 2014, law enforcement officers executed a search warrant at Furman's residence and seized his eMachines and HP computers, as well as his computer storage devices. Giguere interviewed Furman, who immediately made the following assertions: "I'm not trying to do anything illegal," "[m]ost of it is art," and "I don't distribute." Furman admitted that he possessed child pornography and that he had downloaded it using a file-sharing network. He explained how file sharing worked, saying, "[Y]ou got a share file . . . on the program. When you download if you don't take it outta the share file[,] it shares it back . . . to other people." Furman expressed his belief that possessing child pornography was lawful and maintained throughout the interview that he was not distributing it, explaining that he moved or deleted files from his shared folder soon after he downloaded the files from other users. He claimed, "I don't leave it in the shared folder long enough . . . I cut everybody off usually." Furman also claimed that he did not know that his files could be downloaded after he "g[o]t out of the file."

As the officers were leaving the residence, Furman told them that they would find photos or a video of Furman and R.F. applying medication to his granddaughters, A.Z. and S.Z., for a yeast infection. When the images were not found on the seized storage devices, Giguere stopped by Furman's home on September 19, 2014, to ask about them. Furman indicated that the discs containing the images were taken during the search. He explained that he or R.F. took the photos and the video of the girls and that the images were taken in his bedroom shortly after A.Z. began staying with him. According to Furman, the images were "straight shot[s]" of A.Z.'s and S.Z.'s vaginas to "prove that nothing was wrong with [the girls]." Furman said that the images did not show any application of medicine, but rather they were taken "before anything

---

[2]"Pthc" is an acronym for preteen hard core.

-4-

had happened up here." Furman explained that he and R.F. had taken the girls to the clinic and that he "told the doctor [that N.Z.'s] been after 'em," indicating that N.Z. might have molested the girls, but that the doctor "said, no, . . . they look fine." Furman also told Giguere that he intended to take only photos, but that he initially had his camera on the video setting by mistake.

Law enforcement officers eventually located two mini-DVDs containing the video and photos of the girls. Data recovered from the DVDs included the dates and times the images were produced. The first DVD indicated that on August 26, 2012, at approximately 6:00 p.m., Furman took nonpornographic photos of A.Z. Four hours later, Furman took a four-second video and four close-up photos of the vaginal area of either A.Z. or S.Z., while she was in his bedroom. Each of the four photos showed Furman's fingers spreading the victim's labia.

The second DVD indicated that on September 3, 2012, from 12:23 to 12:27 a.m., Furman took several photos of A.Z. as she lay in a chair in Furman's home. A.Z. had just turned four years old. The first photo was a close-up of A.Z.'s genital area covered by underwear. The next set of photos showed A.Z.'s face as she appeared to be sleeping. A.Z. was then posed for a photo. In the next photo, A.Z.'s underwear was pulled back to expose her vagina. During a forty-five-second pause, Furman removed A.Z.'s underwear. He then took six close-up photos of A.Z.'s vaginal area, while using his fingers to spread her labia, and one close-up photo of A.Z.'s anal area, while using his fingers to spread her buttocks.

Giguere called Furman on September 29, 2014, to discuss the video and photos. Furman admitted that he recorded a short video and took photos of his granddaughters' vaginas in August 2012. When Giguere mentioned that the first photo was dark, Furman responded, "I don't think any of those turned out very good." Furman maintained that any images were for documentation purposes. Although he initially denied that his hands were in any of the pictures, he later said, "I admit one,

I might have reached down, I'm not sure." Furman denied any knowledge of the September 3 photos.

A grand jury returned an eighteen-count indictment on October 7, 2014, and a superseding eighteen-count indictment was filed on October 14, 2015. Counts 1 through 13 alleged that Furman had produced images of child pornography, with counts 1 through 8 relating to the photos dated September 3, 2012, and counts 9 through 13 relating to the video and photos dated August 26, 2012. Counts 14 and 15 alleged that Furman had distributed child pornography, with count 14 relating to the file Private Daughter Mellony.jpg that officer Hanson downloaded on December 30, 2013, and count 15 relating to the file 1(2)(3)(2).mpg that special agent Giguere downloaded on August 23, 2013.[3]  Furman pleaded not guilty.

The government provided pretrial notice to Furman that it intended to offer evidence of his 1981 and 1999 criminal-sexual-conduct convictions under Federal Rule of Evidence 414, which permits the introduction of propensity evidence in child-molestation cases. Furman moved *in limine* to exclude evidence of the circumstances surrounding the convictions, arguing that the danger of unfair prejudice substantially outweighed the probative value of that evidence. The district court ruled that the fact of conviction was admissible and that some evidence of the surrounding circumstances was critical to the government's case. In finding that Furman would not be unfairly prejudiced, the district court explained that "the balance goes in favor of allowing the substantive evidence in and overcomes any prejudice that Mr. Furman might have."

---

[3]Furman has not challenged his convictions for possession or receipt of child pornography (counts 16 and 17) or for commission of a felony offense involving a minor when required to register as a sex offender (count 18).

-6-

During Furman's four-day trial, the government presented testimony from the investigating officers, the forensic examiner, the doctors who had seen A.Z. and S.Z. in 2012, and other witnesses. The government also presented the images of child pornography that Furman allegedly had produced, and played for the jury Giguere's recorded interviews of Furman. Over defense counsel's objection, the district court admitted evidence regarding Furman's 1981 and 1999 convictions, which was limited to the judgments of conviction and testimony describing the age, gender, and familial relationship of the victims and the type of sexual conduct involved. The district court instructed the jury that it could consider evidence of Furman's prior convictions for any relevant purpose, but that it was forbidden from "convict[ing] a person simply because you believe he may have committed similar acts in the past." After the jury found Furman guilty on all counts, the district court denied Furman's motion for judgment of acquittal.

Furman faced a mandatory sentence of life imprisonment under 18 U.S.C. § 3559(e) for repeated sex offenses against children and a mandatory, consecutive sentence of ten years' imprisonment under 18 U.S.C. § 2260A for committing a felony offense involving a minor while being a registered sex offender. Furman objected to the mandatory life sentence as unconstitutional. The district court overruled the objection, "find[ing] that a mandatory life sentence [was] not grossly disproportionate to [Furman's] crimes," particularly in light of his "high degree of culpability, which has caused serious harm to his victims and society," and his "demonstrated history of recidivism."

Furman argues that the district court erred in denying his motion for judgment of acquittal on the production and distribution counts of conviction. See Fed. R. Evid. 29(a). He contends that the evidence was insufficient to prove that he produced or distributed child pornography. We review *de novo* the denial of a motion for judgment of acquittal, viewing the evidence in the light most favorable to the verdict and giving the verdict the benefit of all reasonable inferences. United States v. Hill,

750 F.3d 982, 987 (8th Cir. 2014). We will reverse a conviction "only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." Id.

Furman argues that the government failed to prove that he produced the images of child pornography identified in counts 1 through 13 of the indictment. He contends that he never admitted taking the August 26, 2012, images. He argues that he admitted only that he had documented the application of medication onto his granddaughters' vaginas, something that the images do not depict. Furman continues to deny any knowledge of the September 3, 2012, photos. He focuses on the differences between what he told Giguere and what the evidence showed. For example, he told Giguere that photos were taken in the bedroom, but some of the September 3 photos were taken in the living room. Furman also denied taking any pictures of the victim's buttocks, yet one of the September 3 images was a photo of a man's hand spreading a child's buttocks to reveal the child's anus.

The alleged discrepancies between what Furman told Giguere and what the evidence showed do not disprove the government's case or otherwise render the evidence insufficient. The photos and video identified in counts 1 through 13 were recovered from two mini-DVDs, which law enforcement officers found in a case that was located on a shelf near Furman's bed. Data extracted from the DVDs showed that the photos were taken in Furman's home and on his camera on August 26 and September 3, dates on which A.Z., who turned four on September 1, was the only person staying with Furman in his home.

Furman admitted that he recorded a video and took photos of his granddaughters' vaginas. He also described the images to Giguere, explaining that "[none] of those turned out very good" and that he accidently recorded the video when he was trying to take a still photo. Furman shifted his explanation regarding the purpose for the August 2012 photos. He first claimed that it was to document the

application of medication to clear a yeast infection. He then said that the photos did not show any application of medication, but rather documented the condition of the girls' vaginas because of a concern that N.Z. had been molesting them. Moreover, Furman falsely stated that R.F.'s fingers were shown touching the child's genitals in the images, but eventually admitted that he "might have reached down" to touch the child's genitals. The September 3 set of photos begins with nonpornographic photos of A.Z.'s face and her body. The next eight photos depict the child's vagina and anus and are similar to the pornographic photos taken on August 26. In light of this and other evidence presented during trial, we conclude that a reasonable jury could find that Furman himself produced the images of child pornography that were charged in counts 1 through 13 of the superseding indictment.

Furman next argues that he did not "knowingly distribute" child pornography as charged in counts 14 and 15. He claims that the government failed to prove that he had the requisite intent to commit the crime, arguing that the evidence of his February 2014 interview indicated that he did not know that he was sharing files. Furman points to his statements to Giguere that he "doesn't distribute" child pornography, that he immediately moved or deleted the files containing child pornography from his shared folder, and that he did not understand how file sharing worked. Furman also indicated to Giguere, however, that he knew how to access the shared folders of other network users and that he knew how to download their files. Furman also knew that other users could download files from his shared folders because he told Giguere, "[Y]ou got a share file . . . on the program. When you download if you don't take it outta the share file[,] it shares it back . . . to other people." Although Furman claimed that he immediately moved or deleted the files from his shared folders, Giguere testified that files sometimes remained in Furman's shared folders for months before he moved or deleted them. Furthermore, Giguere and Hanson testified that they were able to download child-pornography files. We thus conclude that the evidence presented at trial was sufficient to allow a reasonable jury to find that Furman knowingly distributed child pornography. See Hill, 750 F.3d

at 988 (recognizing that use of file-sharing program and knowledge of computers supported the jury's finding that the defendant knowingly distributed child pornography); United States v. Collins, 642 F.3d 654, 656-57 (8th Cir. 2011) (same).

Furman argues that evidence of his 1999 conviction for first-degree criminal sexual conduct should have been excluded as unfairly prejudicial. He contends that this evidence caused the jury to "ignore[] the lack of evidence when it came to the production counts." Appellant's Br. 19. We review for abuse of discretion the district court's decision to admit the evidence. See United States v. Bentley, 561 F.3d 803, 814 (8th Cir. 2009) (standard of review).

The district court admitted the evidence under Federal Rule of Evidence 414, which provides:

> In a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant.

"Federal Rule of Evidence 414 is an exception 'to the general rule that evidence of past crimes may not be used to prove the character of a person in order to show action in conformity therewith.'" Bentley, 561 F.3d at 814 (quoting United States v. Withorn, 204 F.3d 790, 794 (8th Cir. 2000)). Evidence admitted under Rule 414 remains subject to Rule 403's balancing test, however, which allows the district court to exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice. Id. at 815. To be excluded under Rule 403, the evidence must be unfairly prejudicial. Id. "'Because propensity evidence is admissible under Rule 414,' the fact that evidence of prior acts suggests a propensity to molest children, 'is not *unfair* prejudice.'" Id. (quoting United States v. Gabe, 237 F.3d 954, 960 (8th Cir. 2001)).

-10-

The district court did not abuse its discretion in admitting evidence of Furman's 1999 conviction. The evidence that Furman sexually assaulted his ten-year-old daughter was probative of Furman's sexual interest in prepubescent female family members. It thus helped demonstrate his intent and motive for purposes of the counts relating to producing, distributing, receiving, and possessing child pornography. This evidence also showed Furman's propensity to sexually assault young female family members. The district court tempered the prejudicial effect of this evidence by providing a jury instruction on propensity evidence. While the evidence may have been prejudicial, it was not unfairly so.

Furman argues that the mandatory life sentence required by § 3559(e) for repeat child sex offenders is categorically unconstitutional under the Eighth Amendment. In doing so, he asks us to extend the reasoning of <u>Miller v. Alabama</u>, 567 U.S. 460 (2012), which held that mandatory sentences of life imprisonment without the possibility of parole are unconstitutional for juvenile offenders. We decline to do so. <u>See</u> <u>Harmelin v. Michigan</u>, 501 U.S. 957, 995 (1991) ("There can be no serious contention . . . that a sentence which is not otherwise cruel and unusual becomes so simply because it is 'mandatory.'").

The judgment is affirmed.

_____

-11-